IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Georgia A. Parker,<br><br>Debtor. | C/A No. 06-01497-JW<br><br>Chapter 13 |
| IN RE:<br><br>Pamela Theresa Young,<br><br>Debtor. | C/A No. 06-01847-JW<br><br>Chapter 13 |

FILED
at ___O'clock & ___min ___M
SEP 14 2006

United States Bankruptcy Court
Columbia, South Carolina (1)

ENTERED
SEP 1 4 2006
R. S. S.

## ORDER RESOLVING OBJECTIONS TO CONFIRMATION

These matters come before the Court upon objections to plan confirmation filed by Rent Way, Inc. ("Rent Way") and MWT Leasing, Inc. d/b/a Colortyme ("Colortyme") (collectively referred to as "Creditors"). Creditors respectively filed objections to the chapter 13 plans of Georgia Parker ("Parker") and Pamela Theresa Young ("Young") (collectively referred to as "Debtors"). Pursuant to Fed. R. Bankr. P. 3015 and SC LBR 3015-1, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

**Georgia Parker**

1. Parker filed a petition under chapter 13 on April 12, 2006.

2. On or about January 24, 2006, Parker entered into a "Consumer Rental-Purchase Agreement" with Rent Way for the lease of a sofa, a television, and a bunk bed. The agreement provided that Parker could obtain ownership of the leased property upon making 48 semi-monthly payments and payment of $178.15 for taxes. The purchase price of the leased property

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

is listed at $1,784.49; however, if all payments were made, Parker would have paid $3,746.45 to acquire the leased property. Parker had the option of purchasing the leased property for 50% of the total rental payments remaining plus tax. The agreement provides that Rent Way retained ownership of the property unless Parker paid the early purchase price or made all scheduled payments. Parker assumed liability if the property was stolen, destroyed, or damaged. The agreement provides that Parker may terminate the agreement at any time, without penalty, by returning the property to Rent Way.

3. Parker treats Rent Way as a secured creditor in her proposed plan and seeks to bifurcate Rent Way's claim by paying Rent Way $700.00 for the secured portion of its claim and paying the balance of the claim as unsecured.

4. Parker does not list in her schedules that she has an executory contract with Rent Way and she does not propose in her plan to assume the contract with Rent Way.

5. Rent Way objects to confirmation on grounds that the agreement between it and Parker is a lease, which Parker may not value but must assume or reject in her plan.

### Pamela Theresa Young

6. Young filed a petition under chapter 13 on May 1, 2006.

7. On or about January 27, 2006, Young entered into a "Rental Purchase Agreement" with Colortyme for the lease of living room furniture and a bunk bed. The agreement provided that Young could obtain ownership of the leased property upon making 18 monthly payments or 78 weekly payments and necessary taxes. The purchase price of the leased property is listed at $778.61; however, if all payments were made, Young would have paid either $1,439.28, under the monthly option, or $1,559.20, under the weekly option, to acquire ownership of the leased property. Young also had the option of purchasing the leased property for 55% of the total rental payments. The agreement provides that Colortyme retained ownership

2

of the property unless Young paid the early purchase price or made all scheduled payments. Young assumed liability if the property was lost, stolen, or damaged. The agreement provides that Young may terminate the agreement at any time, without penalty, by returning the property to Colortyme.

8. Young treats Colortyme as a secured creditor in her proposed plan and proposes to pay Colortyme $66.00 per month until its "lien" is paid in full.

9. Young does not list in her schedules that she has an executory contract with Colortyme and she does not propose in her plan to assume the contract with Colortyme.

10. Colortyme objects to confirmation on grounds that the agreement between it and Young is a lease, which Young must assume or reject in her plan.

## CONCLUSIONS OF LAW

The determination of whether Debtors' agreements with the Creditors are security agreements or true leases is determined by state law. See In re Barnhill, 189 B.R. 611, 613 (Bankr. D.S.C. 1992). In Barnhill, the Court examined numerous factors, including the intent of the parties, and determined that the agreement between the debtor and the creditor was a security interest and not a lease. See id. at 615-616. The Court, in following the decisions of other courts, also rejected the creditor's proposal that the Court adopt a single factor test- whether debtor had the right to terminate the agreement without penalty- to determine whether the agreement was a lease. See id. at 615. In these cases, the Court is called upon to reexamine the decision in Barnhill in light of recent revisions to South Carolina law.

In 2001, the South Carolina legislature adopted a revised version of the Uniform Commercial Code. The revised version of the Uniform Commercial Code changes the definition of "security interest." S.C. Code Ann. § 36-1-201(37) now provides:

> (A) Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the

3

consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(1) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(4) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

(B) A transaction does not create a security interest merely because it provides that

(1) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(2) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

(3) the lessee has an option to renew the lease or to become the owner of the goods,

(4) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(5) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

S.C. Code Ann. § 36-1-201(37) (2003).[2]

Like the predecessor to § 1-201(37), this revised provision provides that whether a transaction is a true lease is determined by the facts of each case. See In re Copeland, 238 B.R. 801, 803 (Bankr. E.D. Ark. 1999) (discussing the differences of the revised commercial code). As a matter of law, a security interest is created if the lessee does not have the right to terminate the agreement and one of the factors in § 1-201(A)(1)-(4) is present. See id. If the agreements does not meet the *ipso facto* designation as a security interest, then the Court must exam the facts

---

[2] Further references to the South Carolina Uniform Commercial Code shall be made by section number only.

of each case to determine whether the agreements are true leases or disguised security interests. See id.

### A.    The Agreements Are Not Security Interest Under the Bright Line Test

The determination of whether an agreement is a lease or a sale is made at the time the parties sign the agreement. See 4 JAMES S. WHITE & ROBERT S. SUMMERS, Uniform Commercial Code § 30-3 (4th ed. 2002). In these cases, Debtors bear the burden of proving that the agreements are not true leases. See In re Zaleha, 159 B.R. 581, 586 (Bankr. D. Idaho 1993). The agreements at issue may be considered security agreements, as a matter of law, if they do not provide Debtors with the right to terminate and one of four enumerated factors are present. Debtors urge the Court to determine that the agreements meet this bright line test set forth in § 1-201(37)(A) on grounds that Debtors lack a meaningful right of termination. The Court disagrees and initially finds that the agreements are not security interests under the bright line test.

There appear to be no South Carolina cases applying revised § 1-201(37)(A) to rent-to-own agreements similar to those at issue in these cases. Since South Carolina has adopted a uniform law, the Court is guided by decisions in other jurisdictions that have interpreted this provision of the UCC. See In re Georgetown Steel Co., LLC, 318 B.R. 352, 358 (Bankr. D.S.C. 2004). Other courts have held that a lessee lacks a meaningful right of termination, and thus meet the first part of the bright line test, when an agreement places onerous burdens upon the lessee if the lessee terminates the agreement early. See In re Hoskins, 266 B.R. 154, 160 (Bankr. W.D. Mo. 2001) (finding lessee lacked right of termination where he would remain financially liable under the lease); Hunter v. Snap-On Credit Corp., 229 B.R. 160, 165 (Bankr. N.D. Ohio 1998) (finding lessee lacked meaningful right of termination where lessee would immediately incur liability for the outstanding lease balance); In re Architectural Millwork of Virginia, Inc.,

5

226 B.R. 551, 555 (Bankr. W.D. Va. 1998) (finding a lease meets the first part of the bright line test if lessee is required to pay the present value of the leased good upon early termination).

Debtors argue that the there is no meaningful right of termination in these instances because of the amount of the payments under the agreements is disproportionate to the value of the property; thus any early termination by Debtors would subject them to a penalty in that they would forfeit substantial consideration paid prior to termination. This position, if adopted, would intertwine the first part of the bright line test with the factor set forth in § 1-201(37)(B). Pursuant to § 1-201(37)(B)(1), an agreement does not create a security interest merely because it obligates the lessee to pay consideration greater than the fair market value of the property. The Court thus finds that this factor alone does not indicate that Debtors lack a meaningful right of termination. See In re Riggs, 191 B.R. 309, 316 (Bankr. E.D. Pa. 1996) (finding that the factor set forth in § 1-201(37(B)(1) may not be used to find that an agreement is a security interest). In these cases, Debtors are under no obligation whatsoever to continue in their respective leases and they suffer no penalty upon an early termination, other than, upon their voluntary election to terminate, the loss of the leased property and previously paid consideration both of which are natural consequences of the termination of a lease. See e.g., In re Johnson, 203 B.R. 498, 502 (Bankr. S.D. Ga. 1996) (finding a rent-to-own agreement was not a "credit sale" merely because debtor was obligated to pay three months since this minimum payment period did not rise to the level of a penalty under Regulation Z). Therefore, the Court finds that these agreements should not be initially viewed as creating security interests, as a matter of law, because the first factor of the bright line test is not met.

### B.     The Agreements Are True Leases

Creditors urge the Court to adopt a single factor test, previously rejected by Barnhill, to determine whether these agreements are true leases under the theory that revised § 1-201(37)

6

mandates this result where a debtor has the option to terminate the agreement at-will. This position enjoys support in a number of jurisdictions. See In re Yarborough, 211 B.R. 654, 657-658 (Bankr. W.D. Tenn. 1997); Rigg, 198 B.R. at 685. However, this position is not clearly supported by the text of the statute. See Wachovia Bank, N.A. v. Schmidt, 388 F.3d 414, 416 (4th Cir. 2004) (finding the plain meaning of a statute governs the interpretation barring exceptional circumstances); Copeland, 238 B.R. at 803. Though the South Carolina legislature eliminated references to the intent of the parties, it retained the provision of § 1-201(37) that provides that the determination of whether an agreement is a true lease is determined by the facts of each case. See S.C. Code Ann. § 36-1-201(37)(A). See In re Meeks, 210 B.R. 1007, 1009 (Bankr. S.D. Ill. 1992) (finding absent a mandated classification of an agreement as a security interest under § 1-201(37)(A), the determination as to whether the agreement is a lease or a security interest is determined by the facts of the case).

Having determined that the agreements at issue are not security agreements under the initial bright line test, the Court must exam the facts of these cases to determine the nature of the agreements. See id. In Barnhill and subsequent decisions, the Court has set forth a list of factors that it exams to determine whether a rental agreement is a true lease or a security agreement. In adopting § 1-201(37)(B), the South Carolina legislature determined that some of the factors previously considered by this Court and other courts should not be applicable to such determinations. See e.g., In re Barnhill, 189 B.R. at 613.[3] The revisions to §1-201(37) reassert

---

[3] The Court in Barnhill determined that the following factors were relevant: 1) whether the debtor has acquired sufficient equity in the property by making payments under the agreement so that at the end of the contractual terms it can reasonably be anticipated that the debtor will exercise the option to pay the nominal consideration necessary to purchase the property; 2) whether the lessee may terminate the agreement without paying a sum certain or without any further obligation; 3) whether the lessee is obligated to maintain and repair the property; 4) [whether] [t]he total amount of the payments under the agreement [exceeds] the value of the property; 5) whether the property has a useful life in excess of the economic value to the lessor; 6) whether the debtor acquires any equity in the property by making payments under the agreement; 7) whether the agreement requires the lessee to be responsible for the payment of any taxes, insurance, maintenance, repairs and other charges normally associated with ownership; 8) whether the lessor is in the business of leasing such equipment; and 9) whether the lessee

7

"the significance of residual value as the touchstone of the common law definition of true leases." See Gregory J. Naples, *A Review and Analysis of the New Article 2A*, 93 Com. L.J. 342, 349 (1988). If there is no reversionary interest or if the reversionary interest is insignificant, the transaction is a sale rather than a lease. See 4 JAMES S. WHITE & ROBERT S. SUMMERS, Uniform Commercial Code § 30-3 (4th ed. 2002). In light of the revisions to § 1-201(37)(A), other courts have considered the following factors: 1) whether the lease is terminable at will by the lessee; 2) whether the lessor has a duty to repair; 3) whether lessee is compelled to purchase the goods at the termination of the lease; 4) whether mandatory payments due under the lease are equal to or greater than the value of the leased goods; and 5) whether the useful life of the leased property exceeds the term of the lease. See Meeks 210 B.R. at 1010; In re Johnson, 203 B.R. 498, 503 (Bankr. S.D. Ga. 1996). The Court finds that this non-exclusive list of factors provides a good indication as to whether Creditors retain a meaningful reversionary interest in the goods leased.

Each of these factors weighs in favor of finding that these agreements are true leases and that Creditors have a meaningful reversionary interest. First, each agreement is terminable at will by Debtors. This factor provides a strong indication that Creditors have a meaningful reversionary interest as Debtors have no obligation to continue in their agreements and may end their relationships with Creditors at any time and without cause. See 4 JAMES S. WHITE & ROBERT S. SUMMERS, Uniform Commercial Code § 30-3 (4th ed. 2002) (generally noting that a rent-to-own agreement that is terminable at will is always a lease). Creditors have a contractual duty to repair and maintain the leased property, which indicates that these transactions are not a true sale but rather a lease. Debtors are under no obligation to complete the agreements or

---

assumes the risk of any loss. See Barnhill 189 B.R. at 613. See also, In re Smith, 259 B.R. 561, 566 (Bankr. D.S.C. 2000) (noting that not all of the Barnhill factors are relevant to every case). Factors 1, 4, 7, and 9 no longer appear relevant in light of § 1-201(37)(B).

purchase the leased property. The only mandatory payment that Debtors must make is their first payment. There is no indication in the record that the value of the leased goods is less than this initial, mandatory payment. See In re Bowman, 194 B.R. 227, 229 (Bankr. D. Ariz. 1995) (finding an agreement with a week-to-week rental term is not a disguised sale where there is no obligation to renew the term of the lease and the value of the leased property exceeded the value of the first term). The Court also reasonably infers that the leased goods have a useful life beyond term of the agreements.[4] See Meeks, 210 B.R. at 1010 (assuming that the leased goods had a useful life in excess of the one-month term of a month to month agreement). Based upon the totality of the circumstances before the Court in these cases, the Court finds that the subject agreements are true leases, which must be assumed or rejected as executory contracts.[5]

## CONCLUSION

Based upon the foregoing, Creditors' objections are sustained and confirmation of Debtors' respective plans is denied. Debtors shall amend their respective plans within (10) days of the entry of this Order.[6]

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina,
September 14, 2006

---

[4] The Colortyme agreement has a weekly term and the Rent Way agreement is renewable by Parker making semi-monthly payments.

[5] Due to the importance of consistency in rendering significant decisions, all bankruptcy judges in this District have reviewed and concur with this opinion.

[6] The result of this Order would not change if Debtors' position were adopted. In each case, Debtors entered into their respective agreements within one year of filing the cases at issue. Thus, if these agreements were security interests, Debtors would be prohibited from valuing the Creditors' liens pursuant to the hanging paragraph in 11 U.S.C. § 1325(a). See e.g., In re Turner, C/A No. 05-45355-W, slip op., ___ B.R. ___, 2006 WL 2529570 (Bankr. D.S.C. Mar. 31, 2006).